# THE STATE OF NEVADA ex rel. WILLIAM T. O'NEALE *v.* J. G. McCLINTON.

INSANITY OF DISTRICT JUDGE. Where a District Judge was pronounced insane and sent to an insane asylum under the provisions of the statute for the care of insane persons, (Stats. 1869, 104) and upon a certificate thereof, the Governor appointed another person to fill his office as in case of a vacancy: *Held*, that the office was not vacant, and that the appointment of another Judge was void.

STATUTE CONCERNING INSANE PERSONS—VACANCY IN OFFICE. The finding and declaration of an incumbent of the office of District Judge to be insane, in accordance with the provisions of the statute for the care of the insane (Stats. 1869, 104) does not create a vacancy in his office.

CONSTITUTIONAL CONSTRUCTION—REMOVAL OF JUDGES FROM OFFICE. As the Constitution (Art. VII, Sec. 3) provides for the removal from office of Judges in a certain manner by the Legislature, such provision is exclusive and prohibitory upon the Legislature of other means for such removal.

OFFICE, HOW VACATED. An office presently filled cannot become vacant without a removal either voluntary or involuntary; when voluntary, no judicial determination resulting in vacation is necessary; when involuntary, such determination is essential, unless otherwise provided by the Constitution or laws in pursuance thereof.

ARGUMENT OF INCONVENIENCE. The argument of inconvenience can have no weight in the construction of a law; or at most, only in the case of a very doubtful point.

This was an original proceeding in the Supreme Court in the nature of *quo warranto* to inquire into the right of the defendant to hold the office of District Judge of the Eighth Judicial District. It appeared that on May 27th, 1869, Judge Chase was taken before Judge Wright of the Second Judicial District, declared to be insane, and in accordance with the statute ordered to be conveyed to the Insane Asylum at Stockton, in California. The testimony of the physicians on the inquest showed that he was monomaniacal and belligerent; subject to sudden paroxysms of passion, and disposed to quarrel with his friends; that there was no permanent hallucination; that he had rational intervals, but that his disease was increasing.

*Mesick & Seely*, for Relator.

I. When the office of District Judge is once filled, it can only

22

become vacant in one of three ways: First, by the death of the incumbent; second, by the resignation of the incumbent; or, third, by the removal of the incumbent from the office by competent authority. It is admitted that S. H. Chase was duly elected Judge at the November election in 1866, and unless the office has since become vacant, (the term of office being four years) Chase is still Judge, and the defendant is a usurper. Chase has neither died nor resigned his office, and consequently is Judge, unless he has been removed from office; and he has not been removed, because the Legislature has not acted in the premises, and no other authority has power to remove a District Judge. (Const., Art. VIII, Secs. 3 and 4.)

II. The statute of 1866 (Stats. 1866, 237, Sec. 35) does not necessarily include the office of District Judge, and was probably passed in pursuance of the requirements of section four, article eight, of the Constitution, in order to provide for the removal of civil officers other than Judge, etc. But if the office of District Judge is included within said section thirty-five, to that extent the section is void under the Constitution.

III. If section thirty-five does include the office of District Judge, and it be valid, Judge Chase has never been found, upon a commission of lunacy issued to determine the fact, to be a confirmed insane person, or confirmed lunatic. The proceedings had to ascertain his mental condition were not upon such a commission of lunacy as is required by the section referred to, nor a commission of lunacy at all in any legal sense. (2 Barb. Chan. Practice, 226 and 242, Sec. 3.) The commission was not issued by any Court, nor were the proceedings which were had in the premises had in Court, nor entered of record in Court, but were *ex parte*, and had at the Judge's chambers. Besides, Judge Chase was not found to be a confirmed lunatic; on the contrary, he was found to be temporarily and curably insane. The proceedings were had under the provisions of the Act of 1869, passed to provide for the curing of persons temporarily insane. Confirmed lunatics are excluded from the benefit of that Act.

*Wells, Seawell & Boring,* for Respondent.

I.   It is contended that the mode pointed out in article eight, section three, of the Constitution, is the only constitutional mode of ousting from office a District Judge.   We would hazard nothing, were we to admit the proposition to be true and logical.   Removal from office is one thing; what act, omission, or event shall render an office vacant, is another and quite a different thing.   While it may be true that one judicial tribunal cannot, by proceedings instituted, remove a Judge, it is certainly true that when an act has been done, or an omission has been made, or an event has occurred which, *per se,* vacates the office, a Court or Judge, as the facts and nature of the case may justify and require, may judicially declare that the act was done, the omission made, or the event had transpired, which rendered the office vacant, and that " thereby the office became and is vacant."   That would not be removing the incumbent, for he would not be, *de jure,* an incumbent, after the doing of the act, making of the omission, or happening of the event, vacative in its operation and result.

The spirit of the constitutional provision relied on does not contemplate cases of insanity.   The cases then and there sought to be provided for were those in which the will and willfulness of incumbents would necessarily have to be met and dealt with.   When a man is insane, he is, so far as the discharge of official, even the ordinary, duties of life are concerned, legally *dead:* not so, when from long protracted debility one fails to perform the functions of an office—a case clearly contemplated in the adoption, after much debate, of the fundamental provisions referred to.

II.   What is " confirmed insanity," in contemplation of the statute of 1866, 237, Sec. 35?   Permanent, incurable, or life-long insanity could not have been meant; otherwise, why not so have expressed it?   If meant, how would the fact ever be ascertained and judicially determined?   Few, if any, even of the best skilled and profoundest physicians, would run the hazard of swearing that, as a fact, a man was insane and would never, in any event, under any circumstances, be cured, or recover from it.   A man may, as

we understand our language, be *confirmedly* insane, and still not be *permanently* so for lifetime, absolutely incurable and irrecoverable. A man may have confirmed insanity, as he may have confirmed cholera, small-pox, or fever, and be cured or recover. Evidently, the fact intended to be arrived at, as contemplated in the statute, is: "Is the incumbent incapacitated, by reason of fixed or settled insanity, to perform the functions of the office?" The rights of incumbents do not alone govern in such cases—those of the public must be observed and preserved as well.

III. Was Judge Chase found to be insane by a "commission of lunacy," as contemplated by the statute? It is contended that the commission of lunacy contemplated is a common-law commission of lunacy. We think not. But if prior to the statute of 1869 such a commission would have been requisite, it would not now, as that statute prescribes the mode of ascertaining and adjudging insanity. Clearly, a commission of lunacy being provided for in the last named statute, it supersedes the common-law commission, and is effectual, inasmuch as it requires witnesses, inquest, and judgment.

IV. Judge Chase has been, in the mode established and defined by the law of the State, judicially declared insane; and under that law, his insanity was found not to be of a harmless character; on the contrary, so confirmed and dire as to render him unsafe and dangerous to be at large, and requiring, in the opinion of the inquisitors and the judgment of the Judge, his confinement in an insane asylum. He could not have been committed to, or received in, that asylum upon an examination under a common-law commission of lunacy, or in any other way examined and committed, save in the mode in which he was—the statutory mode. That examination, and judgment, and commitment, rendered the fact of his insanity *res adjudicata*. No good end could then be attained by a reëxamination and readjudication of the same fact, under a common-law commission—it is not contemplated by any law, and would be labor in vain.

By the Court, WHITMAN, J. :

This proceeding is in the nature of *quo warranto*, informing that

defendant has entered into and usurped the office of District Judge of the Eighth Judicial District of the State of Nevada, and praying his exclusion therefrom.

It appears from the pleadings and evidence that S. H. Chase was duly elected to fill said office for a term ending with the first. Monday of January, 1870. That on the twenty-seventh of May, 1869, said Chase was under certain statutory proceedings declared insane, and sent to the Insane Asylum at Stockton, California, as by such statute provided; and that upon certificate of such action the Governor of the State, deeming the office vacant therefor, on the fourteenth day of July, 1869, issued a commission to defendant, who thereunder qualified in legal form, and has since been, and is now, acting as such Judge. The sole question in the case is, whether there was a vacancy to be filled—all the proceedings had being admitted to be formally correct.

The Act followed is entitled "An Act to provide for the care of the Insane of the State of Nevada, and to create a Fund for that purpose." (Stats. 1869, 104.) The title and text of the statute correspond, and the former fully indicates the entire purpose and object of the latter, which was not intended to result, in any event, in a judicial determination creating a vacancy in any office. Had, however, this been its intention or result it would, as applied to judicial officers, be void, because clearly repugnant to the Constitution of this State. That provides, touching such, thus: Art. VII, Sec. 3—" For any reasonable cause, to be entered on the journals of each house, which may or may not be sufficient grounds for impeachment, the Chief Justice and Associate Justices of the Supreme Court, and Judges of the District Courts, shall be removed from office on the vote of two-thirds of the members elected to each branch of the Legislature; and the Justice or Judge complained of shall be served with a copy of the complaint against him, and shall have an opportunity of being heard in person or by counsel in his defense: *provided*, that no member of either branch of the Legislature shall be eligible to fill the vacancy occasioned by such removal.

Sec. 4. " Provision shall be made by law for the removal from office of any civil officer other than those in this article previously

specified, for malfeasance or nonfeasance in the performance of his duties."

Such, or similar provisions, at the time of their adoption by the Constitutional Convention of Nevada, were neither new nor singular, having been therebefore incorporated in the Constitutions of many States of this Union. That there is a lack of judicial interpretation of, or decision upon their meaning or effect, must be attributed to the fact that the same is clear and evident. When called in question, however, they have been held to be exclusive and prohibitory upon the Legislature against the employment of other means for the removal of officers within their purview.

An office presently filled cannot become or be vacant without a removal, either voluntary or involuntary. When voluntary, no judicial determination resulting in vacation is necessary; when involuntary, such determination is essential, unless otherwise provided by the Constitution or laws in pursuance thereof; and in all cases is of that nature by whatever body performed. (*Page* v. *Hardin,* 8 B. M. 648.)

In the case of *Lowe* v. *Commonwealth,* considering a statute providing for the suspension from office of a county jailer, claimed to be unconstitutional because the Constitution had provided that such officer, with others named, should " be subject to indictment or presentment for malfeasance or nonfeasance in office," conviction to vacate the office, the Court, by Chief Justice Stiles, says : " But the question yet remains to be decided whether the Legislature can prescribe any other mode of removing such officers from office than those furnished by the Constitution, or enact a law whereby such officers may be suspended from a performance of the duties of their respective offices, and deprived of the emoluments of the same, which suspension—so far as the officer is concerned— would be certainly tantamount to a removal. It seems to us that there can be but one view of this question, which is, that wherever the Constitution has created an office and fixed its term, and has also declared upon what grounds, and in what mode, an incumbent of such office may be removed before the expiration of his term, it is beyond the power of the Legislature to remove such officer, or suspend him from office for any other reason or in any other mode

than the Constitution itself has furnished. To recognize the existence of such power would be, in effect, to say that these provisions of the organic law of the land are subject to legislative caprice, and to that extent, to defeat and violate the restrictions and safeguards which were inserted in the Constitution in order to give it permanence and stability. The results of such a doctrine might be pernicious in the extreme.

" The Governor's term of office is fixed by the Constitution. That instrument likewise provides how he may be impeached and removed, and declares that all impeachments shall be tried by the Senate. Would it be seriously contended that the Legislature could, by enactment, subject him to trial for official misconduct in any other mode—as by indictment or presentment in a Circuit Court—and declare that, upon a conviction thus had, his office should be deemed vacant, or that he should be suspended from a discharge of his official duties ? And yet such legislation would be valid if that department of the government can, at its option, change the provisions of the Constitution in reference to the mode of proceeding against the Governor, or any officer whose office is created by that instrument. Or suppose the Legislature should attempt by enactment to empower this Court, whenever in its judgment the public interests demanded it, to suspend any State officer whose term of office is fixed by the Constitution, and who is subject to impeachment, from the performance of his official duties for such period as the Court might deem proper ; would such enactment be regarded as constitutional ? Most certainly not. And yet the reverse would be true if the power in question really existed. In our opinion, the fact that the framers of the Constitution inserted in that instrument the several provisions fixing the terms of the offices thereby created, and prescribing the grounds upon which and the modes whereby the incumbents of such offices may be removed, is altogether sufficient to warrant the conclusion that those subjects were fully considered by them, and that they intended by embodying said provisions in the Constitution to make them permanent and fixed, and thus to place the subjects to which they relate altogether beyond legislative control. (*Lowe* v. *Commonwealth*, 3 Met. Ky. 237.) How applicable the reasoning of the citation to

the case at bar.   See also, as generally touching this matter, *Page* v. *Hardin,* (8 B. M. 648); *People ex rel. Ballou* v. *Dubois,* (23 Ill. 547).

A reference to the debates of the convention framing the Constitution of this State, will show that the provisions herein referred to were maturely considered, and the consequent inference arises that they were understandingly adopted.

The argument of inconvenience urged against the view taken by the Court of the Constitution, can have no weight; at most it could only affect a doubtful point, and in every such instance it is the duty of the Court to sustain the statute in immediate question. This is not a case for doubt; the Constitution is clear and explicit. During the term of office of Judge Chase there could be no vacancy, except upon his voluntary or involuntary removal therefrom.   He has not voluntarily removed himself, nor has he been removed as the Constitution commands; therefore there is no vacancy, and was none for the Executive to fill.   So the commission issued to the defendant was and is null, and the prayer of the relator must be granted, and judgment of ouster with costs be rendered against J. G. McClinton, defendant herein.

It is so ordered.

By LEWIS, C. J.:

Although not concurring in the opinion of Mr. Justice Whitman respecting the constitutional question discussed by him, I have nevertheless arrived at the same ultimate conclusion upon another view of the case.

The statute (Stats. 1866, 237, Sec. 35) declares that " every office shall become vacant upon the occurring of either of the following events before the expiration of the term of office," among which is " the confirmed insanity of the incumbent found upon a commission of lunacy issued to determine the fact."   Two things it will be observed, are essential under this Act to create the vacancy:   First, the insanity must be confirmed; and second, that fact must be found by a " Commission of Lunacy."   But the proceedings whereby it is sought to establish a vacancy in the office to which the defendant was appointed, not only do not show the exist-

ence of these two pre-requisites, but on the contrary, show that the insanity is not of this character; and furthermore, that the question was not submitted to nor was the insanity found by a commission of lunacy. The proceedings had against Judge Chase, as shown by the record, were such only as are authorized by special statute, providing for the case of persons who may be afflicted with curable insanity, or such as would render it dangerous for them to be at large. The character of proceeding prescribed by that statute to determine the fact bears but little resemblance to a commission of lunacy, or the course pursued under it. That is a commission generally issuing out of a Court of Chancery to certain persons called Commissioners, who are required to inquire whether the person alleged to be insane be so or not. In executing this commission a jury is usually summoned, and the jurors and Commissioners sit together and form the Court, for the purpose of determining the fact. The jury are all sworn or affirmed, and they hear such evidence as the Commissioners admit; and generally notice of the inquisition is required to be given to the alleged lunatic, who is permitted to traverse the allegation of insanity. It is not pretended that such proceedings, or anything analogous to them, were had in this case, and the vacancy because of insanity could only happen in the manner and by the means pointed out by the statute.

For these reasons I concur in the conclusion that no vacancy existed in the office to which the defendant was appointed, and that his commission was void.